Menard v City of New York (2026 NY Slip Op 50072(U))

[*1]

Menard v City of New York

2026 NY Slip Op 50072(U)

Decided on January 22, 2026

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 22, 2026
Supreme Court, New York County

Frances Menard, ROSA DEVALLE, Plaintiff,

againstThe City of New York, THE NEW YORK CITY POLICE DEPARTMENT, 
 P.O. STEVEN MARKSBERRY, P.O. BRENDAN BERGIN, JOHN DOES, Defendant.

Index No. 151646/2018

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68 were read on this motion for SUMMARY JUDGMENT.
Upon the foregoing documents, defendants the City of New York ("City") moves on behalf of defendants the New York City Police Department ("NYPD"), PO Steven Marksberry ("Officer Marksberry"), and PO Brendan Bergin ("Officer Bergin") (collectively, "Defendants") pursuant to CPLR § 3212 for summary judgment to dismiss the complaint.[FN1]
Plaintiffs Frances Menard ("Menard") and Rosa Devalle ("Devalle") (together, "Plaintiffs") oppose. For the [*2]reasons set forth below, the motion is granted in part, to the extent set forth herein, and denied as to the remainder.BACKGROUNDPlaintiffs commenced this civil rights action to recover damages in connection with their arrest by members of the NYPD at approximately 2:30 a.m. on February 28, 2017. On the night of the arrest, Plaintiffs were sleeping in a vehicle that was double parked with the engine running in front of 75 East 190th Street, Bronx, New York. Responding to a radio call about individuals sleeping in a parked car, Officers Marksberry and Bergin, along with two other members of the NYPD, arrived at the location and woke the Plaintiffs by knocking or tapping on the vehicle's windows. Many facts regarding the encounter between the officers and Plaintiffs are disputed, but both Plaintiffs were ultimately arrested and charged with operating a motor vehicle while under the influence of alcohol. The criminal charges against both Plaintiffs were later dismissed, and they filed notices of claim pursuant to the General Municipal Law.
In the course of Plaintiffs' interaction with the officers on the night of the arrest, Mr. Menard refused to take a field test to determine whether he had consumed alcohol and subsequently refused to take a chemical test to determine the alcoholic content of his blood pursuant to Vehicle & Traffic Law ("VTL") § 1194 (1)(b) and (2), respectively. On September 11, 2017 and March 18, 2018, a Department of Motor Vehicles hearing was held before an administrative law judge to determine whether Mr. Menard's refusal was valid or in violation of VTL § 1194 (2) (NYSCEF Doc Nos. 44, 48, hearing tr). At the conclusion of the hearing, the administrative law judge found that there was a reasonable basis for the stop, probable cause for the arrest, and that Mr. Menard was given proper warning of the consequences of refusing the test (NYSCEF Doc Nos. 48, hearing tr). Mr. Menard's driver's license was suspended, and he received multiple fines and a driver responsibility assessment fee (NYSCEF Doc No. 40, Menard dep tr at 29).
On February 22, 2018, Plaintiffs commenced this action by filing a summons and complaint that interposes ten causes of action against Defendants for (1) false arrest, (2) negligent hiring, training, supervision, and retention under New York state law, (3) Monell under 42 U.S.C. § 1981, 1983, 1985, 1986, and respondeat superior, (4) municipal and/or government liability, (5) excessive force, (6) malicious prosecution, (7) abuse of process, (8) intentional infliction of emotional distress, (9) negligence, and punitive damages (NYSCEF Doc No. 1, complaint). The City filed an answer on behalf of all defendants on May 14, 2018 (NYSCEF Doc No. 3, amended answer).[FN2]
A case scheduling order was entered on October 26, 2018, and the case proceeded to discovery. Plaintiff filed the note of issue on May 15, 2025 (NYSCEF Doc No. 32).
Defendants now move pursuant to CPLR § 3212 to dismiss all causes of action [*3](NYSCEF Doc No. 33, notice of motion). Plaintiffs oppose the motion with respect to the causes of action for false arrest, malicious prosecution, and abuse of process, but voluntarily discontinues the remaining causes of action (NYSCEF Doc No. 62, Marino aff in opp ¶ 4). With respect to the cause of action for punitive damages, Plaintiff discontinues to the extent that it is asserted as a separate cause of action, but maintains their right to pursue an award of punitive damages (NYSCEF Doc No. 61, Marino aff in opp ¶ 16).

EVIDENTIARY RECORD
On February 28, 2017, Officers Marksberry and Bergin were on midnight patrol in the Bronx, New York, when they received a radio call that there were people "passed out with their vehicle parked in the middle of the street" in front of 75 East 190th Street (NYSCEF Doc No. 38, Marksberry dep tr at 39; Bergin dep tr at 48, 53).
The evidence proffered by the parties on this motion includes transcripts of the 50-h hearings and depositions of both Plaintiffs, deposition transcripts of Officers Marksberry and Bergin, a transcript of Mr. Menard's license suspension hearing, records from the Intoxicated Driver Testing Unit ("IDTU"), arrest reports, NYPD complaint reports, the District Attorney's records regarding Plaintiffs prosecution, photographs of the Plaintiffs taken by Officer Marksberry on the night of the arrest, certificates of disposition, and filings from this action (NYSCEF Doc Nos. 36-56, 64-66).
In his 50-h hearing, Mr. Menard testified that he and Ms. Devalle, his girlfriend, were sitting in Ms. Devalle's parked car in front of her residence at around 1:30-2:00 a.m. on the night of the incident when the were approached by Officers Marksberry and Officer Bergin (NYSCEF Doc No. 41, Mernard 50-h tr at 9-10). He tesified that they were there for approximately an hour and, during this time, were "Making out. Talking. Listening to music." (id. at 10-11). He was sitting in the driver's seat and Ms. Devalle was sitting in the passenger's seat when they were approached by four NYPD officers, one on the driver's side and three on the passenger's side (id. at 11). He rolled down his window, provided the officers with his driver's license and registration, told them he was "sitting with his girlfriend in front of her building listening to music and talking," and turned off the car at their request (id. at 14-15). Mr. Menard put the vehicle keys in the vehicle's cupholder, and stepped out of the vehicle (id. at 15). He testified that, later, when he was in handcuffs at the back of the vehicle, he also heard the officers ask Ms. Devalle to step out of the vehicle (id. at 16).
When the officers asked him what he was doing at the location and where he was coming from, Mr. Menard advised them that they had come from a diner called the Bedford Park Diner (id. at 20). The officer asked him if he had been drinking and he said no (id. at 20). One of the officers asked him to blow into a breathalyzer, and he said no because he "[doesn't] trust that equipment, it's dirty, it looks like it came off of the bottom of your trunk . . . the [white] wrapper on it was ripped open [and] was all grey and brown dirt stains over it and it had a tube that [he] thought was dirty as well" (id. at 21). He further testified that both Officers Marskbury and Bergin were asking him questions and working the breathalyzer device together (id. at 22). He could not recall which officer asked him to blow into the breathalyzer, but believed it was [*4]Officer Bergin (id. at 22). The officer advised him that he would be arrested if he refused the breathalyzer, and he was placed in handcuffs after refusing again (id. at 22-23). Mr. Menard testified that, after he was placed in handcuffs, the officers walked him to the passenger's side at the rear of the vehicle, where he saw one officer open the passenger door and give Ms. Devalle his belongings (id. at 25). He further testified that "[a]t that point, the officers told [Ms. Devalle] to move the vehicle, to park it, and then they walked [him] away" (id. at 26). Then they put him into the back of the police vehicle (id. at 26).
Mr. Menard testified that, while in the vehicle, he heard the officers speaking in a "derogatory, nasty tone" to Ms. Devalle (id. at 27). Mr. Menard was in the vehicle with Officer Bergin and Officer Marksberry "was the one that was giving her a hard time and speaking with a bad attitude" (id. at 27-28). After about 15-25 minutes, Officer Marksberry arrested Ms. Devalle and put her in the same vehicle with Mr. Menard (id. at 28). The officers transported both Plaintiffs to the 45th NYPD precinct, where they sat, handcuffed, on a bench next to the computer terminal in front of the holding cells for "[m]aybe an hour and a half, two hours" (id. at 30-31). During this time, the officers brought Mr. Menard into a different room with two officers from the Highway Division (id. at 32). Officer Bergin was also present in the room, but not Officer Marksberry (id.). After 15-20 minutes, the Highway Division officers administered three field sobriety tests on Mr. Menard and again asked him to take a breathalyzer test, which he refused (id. at 34-35). The Plaintiffs were later transported to the 52nd NYPD precinct before later being taken to Central Booking (id. at 40). Eventually he appeared before a criminal court judge and was charged (id. at 46). Mr. Menard testified that he did not consume any alcohol at the diner before the encounter with the officers or for 24 hours before his arrest (id. at 48).
During his deposition, Mr. Menard testified in greater detail regarding the night of his arrest (NYSCEF Doc No. 40, Menard dep tr). In relevant part, Mr. Menard added that he and Ms. Devalle fell asleep while sitting in the vehicle that evening and the officers woke Plaintiffs up by knocking on the window and shining flashlights (id. at 54). He reiterated that Officer Marksberry approached the driver's side door and questioned him, while Officer Bergin approached the passenger's side (id. at 56-57).
Ms. Devalle testified in her 50-h hearing that, on the night of the arrest, she drank three or four beers with Mr. Menard's father and aunt before walking to meet Mr. Menard at the Bedford Diner (NYSCEF Doc No. 43, 50-h tr at 12, ln 4-5, 16-17; 14, ln 5-7; 31, ln 10). She testified that Mr. Menard was not drinking (id. at 12, ln 22-23). After dinner, she and Mr. Menard drove around her block two or three times looking for parking before double parking across the street from her building to wait for parking (id. at 16-17). They were there about an hour "listening to music, talking, hugging and kissing" before the police arrived (id. at 18). In her deposition, Ms. Devalle added that Plaintiffs fell asleep while sitting in the vehicle (NYSCEF Doc No. 42, Devalle dep tr at 32). She recounted that the officers approached the car and spoke to Mr. Menard before taking him to the back of the car, but she did not know what they were doing in the back (NYSCEF Doc No. 43, 50-h tr at 22-23). She testified that she speaks basic English (id. at 24, ln 20).
She further testified that the police came over to her during the interaction and told her [*5]that she had to "move the car, park the car" (id. at 26, 7-9), but she did not move the vehicle because she had to move the seat because it was too far back, she "got a bit nervous," and "thought about calling a friend, someone to help [her], because there was no one [she] could speak to" (id., ln 13-19). She testified that the officers arrested her because she was "delaying" (id. at 27, ln 9, 14). Regarding when she first exited the car, Ms. Devalle testified that when she was in the passenger's seat, an officer "opened the door and told me that I had to get out" and that she "had to move the car, [] park the car" (id. at 30, ln 12-13, 20-21). She got into the driver's seat, but she did not start or move the car (id. at 26, ln 11; 32, ln 23). The officers then told her to get out of the driver's seat (id. at 32). After she exited the vehicle a second time, the officers administered a breathalyzer test on her and placed her under arrest (id.). Ms. Devalle's deposition testimony is consistent with this narrative (NYSCEF Doc No. 42, Devalle dep tr). She also testified in her deposition that she did not remember where the keys to the vehicle where when she was in the driver's seat (NYSCEF Doc No. 42, Devalle dep tr at 45, ln 24).
Deposition transcripts for both Officers Marksberry and Bergin were also submitted on the motion. In relevant part, Officer Marksberry testified that he and Officer Bergin proceeded to the location after receiving the radio call, and two other NYPD members were already on the scene when they arrived, Sergeant Nunez and Officer Ambrosia (NYSCEF Doc No. 38, Marksberry dep tr at 47). The sergeant's vehicle was parked behind the Plaintiffs' vehicle, and Officers Marksberry and Bergin parked behind the sergeant (id. at 48). The officers approached the vehicle and saw the Plaintiffs sleeping in the driver's seat and front passenger seats of the car, sitting upright, "leaned over on each other" (id. at 50, ln 7-19). Ms. Devalle's head was on Mr. Menard's shoulder (id.). The officers "tried waking the [Plaintiffs] up by knocking on the windows, flashing the lights inside, trying to rouse them awake to see why they were there" (id. at 48, 51-52). The motor to the vehicle was still running when they approached the car, with the engine warm and the brake lights were not on (id. at 49). Officer Marksberry testified that he did not know how long it took to rouse Plaintiffs, but in the course of trying to rouse them, he took photographs of them asleep (id., ln 21-22; see also NYSCEF Doc No. 50, photographs).
Officer Marksberry testified that he was on the driver's side when Mr. Menard woke, and he instructed Mr. Menard to roll down the window and turn off the vehicle, which he did (id. at 54, ln 20-21; 55, ln 6-8). Officer Marksberry could not recall if he asked Mr. Menard for the vehicle keys and did not recall ever having the keys during the stop (id. at ln 9-12). Officer Marksberry testified that he then asked Mr. Menard to step out of the vehicle because he "smelled alcohol on [Mr. Menard's] breath, he had bloodshot watery eyes and slurred speech" (id. at ln 16-22; 57, ln 7-9), and that he was further than a foot away from Mr. Menard when he smelled alcohol on his breath (id. at 59, ln 19; 67, ln 8-10, 18-20). Officers Marksberry further testified that Mr. Menard had "flushed and ruddy skin" (id. at 72, ln 11) on both sides of his face (id. ln 23-24).
Officer Marksberry testified that he then asked Mr. Menard to walk to the rear of the vehicle out of traffic (id. at 74, ln 17-18). Officer Marksberry testified that he "observed [Mr. Menard] to be unsteady on his feet," "using the car as a guide," and "was not walking like somebody who was sober would walk" (id. at 75, ln 2, 6-8; 77, ln 3, 9-10). When asked to clarify whether Mr. Menard was losing his balance while walking and whether "he takes a step forward [*6]and then he takes a step back, because he's losing his balance to catch himself," Officer Marksberry responded "Correct" (id. at 77, ln 17-24). After observing Mr. Menard to be unsteady on his feet, Officer Marksberry asked him to submit to a preliminary breath test ("PBT") (id. at 75, ln 2-3; 78, ln 14; 79, ln 11-12). Mr. Menard questioned whether the straw used in the PBT was clean and refused to take the test (id. at 80, ln 8-13).
Officer Bergin then placed Mr. Menard under arrest (id. at 82, ln 12-14). Officer Bergin handcuffed Mr. Menard, and both officers walked him to their police vehicle to place him in the back of the police vehicle (id. at 88-89). Officer Marksberry testified that, after they placed Mr. Menard in the back of the police vehicle, Sergeant Nunez alerted him that Ms. Devalle "had jumped into the driver's side of the vehicle" (id. at ln 6-9). Officer Marksberry explained that when they removed Mr. Menard from the vehicle, Ms. Devalle "was complaining about that it was her vehicle, and she needs to find parking, we assured her that we could find parking for her and to remain inside the vehicle and we'll talk to her after our investigation was done" (id., ln 18-23). She purportedly "did not listen to the instructions by myself or by my sergeant or by Officer Bergin," and "jumped inside the vehicle and proceeded to start the vehicle" (id. at 89-90). Officer Marksberry testified that he and Sergeant Nunez walked up to the driver's side of the vehicle and one of them asked her to shut off the vehicle and exit the vehicle (id. at 96, ln 8-11). Once she got out of the vehicle, Officers Marksberry "smelled [] alcohol on her breath," and he gave her a PBT (id., 3-6). She "blew a .1 something, which is over the legal limit" (id., ln 8-9). Sergent Nunez then ordered Officer Marksberry to arrest Ms. Devalle, which he did (id., ln 11-12, 21-23).
Officer Bergin also testified that he and Officer Marksberry proceeded to the location of the car after receiving a radio call regarding two people sleeping in a car (NYSCEF Doc No. 39, Bergin dep tr at 48, ln 22-24; 55, ln 24). Sergent Nunez was already on site when the Officers arrived (id. at 59, ln 8-9). Officer Bergin further testified that after he and Officer Marksberry arrived at the Plaintiffs' vehicle, he approached the driver's side of the vehicle, while Officer Marksberry approached the passenger's side (id. at 59, ln 17-18). As they approached the vehicle, he was "focused on going to the driver's side of the vehicle and that's where [they] saw the two people head to head sleeping in the front seat of this car" (id., ln 21-24). The car was running and parked (id. at 60, ln 8). The officers tapped the window, but Plaintiffs did not immediately rouse (id., ln 12-21). After additional tapping or knocking on the window, Mr. Menard rolled down the driver's side window of the vehicle (id. at 61-62).
Officer Bergin testified that he spoke to Mr. Menard at the driver's side window, and, "[t]o the best of [his] knowledge," Officer Marksberry was positioned at the passenger's side window (id. at 63, ln 15-17). He asked Mr. Menard, "in sum and substance why is your car parked like this and why are you guys sleeping" (id. at 64, ln 2-5). Officer Bergin did not recall Mr. Menard's exact responses, but "there was some evasive questioning that threw my senses up and that's when I asked him to step out of the vehicle" (id., ln 7-10). Officer Bergin clarified that he meant Mr. Menard gave evasive answers to his questioning (id, ln 11-13). After Mr. Menard exited the vehicle and was positioned between Plaintiffs' vehicle and the police vehicle, the officers purportedly "smell[ed] a strong smell of alcohol, slurred speech, unsteady on the feet and asked him to take a PBT," and Mr. Menard had bloodshot, watery eyes and ruddy or reddish [*7]skin (id. at 79, ln 12-23). Officer Bergin testified that he offered Mr. Menard the PBT, who refused to take the test because he did not trust the machine (id. at 81, ln 2-3; 84, ln 15-19). Officer Bergin was then "informed" that Mr. Menard was going to be arrested (id. at 86, ln 19-20).
With respect to Ms. Devalle, Officer Bergin testified that he did not "particularly speak to her" because he was focused on Mr. Menard and there was a language barrier because she spoke Spanish, and he does not speak Spanish (id. at 91, ln 7-13; 116, ln 14-16). He also testified that he could not recall whether someone on the scene told her to move the vehicle or that the vehicle had to be moved (id. at 116, ln 20-24). He did not arrest Ms. Devalle and could not recall whether she was arrested on the passenger or driver's side of the vehicle, who put handcuffs on her, or who carried or escorted her to the police vehicle (id. at 118, ln 15-25; 119, ln 2-8). He also testified that he did not observe her sitting behind the wheel of the car, only in the passenger's seat (id. 120, ln 21-24).
Records from the New York City District Attorney's office produced in discovery indicate that Mr. Menard was charged with two counts of operating a motor vehicle while under the influence of alcohol or drugs under VTL § 1192 (3) and (1), and Ms. Devalle was charged with three counts of operating a motor vehicle while under the influence of alcohol or drugs under VTL § 1192 (2), (3), and (1) (NYSCEF Doc No. 49, DA's records at 6, 22). Officer Bergin provided the supporting statement for the criminal complaint against Mr. Menard, while Officer Marksberry provided the supporting statement for Ms. Devalle (id.).
Three videos were also submitted into evidence, including one taken from the driver's side of the vehicle, one from the passenger's side, and one taken at the 45th precinct (NYSCEF Doc No. 55, 64, 65, 66). The driver's side video opens with the vehicle parked on the street, with the front and rear lights illuminated (NYSCEF Doc No. 66). At timestamp 02:19:21, a police car arrives behind the vehicle, and one officer approaches the driver's side door, followed shortly after by a second officer who approaches the passenger's side door before both officers walk back toward the police car (id.). Four police officers approach the vehicle, three on the driver's side and one on the passenger's side (id. at 02:21:04). The lights of the vehicle are extinguished (id. at 02:22:01). Mr. Menard exits the vehicle on the driver's side and walks, with his hands in his jacket pockets, to the back of the vehicle (id. at 02:22:08). He stands between the vehicle and the police car for several minutes, surrounded by three officers with the fourth officer moving between the group and the police car (id.). Three officers escort Mr. Menard to the police car, while the fourth officer approaches the passenger's side of the vehicle (id. at 02:29:20).
The view of the passenger's side of the vehicle is blocked by the vehicle (id.). The fourth officer then comes back into view of the camera and walks toward the police car (id. at 02:30:04). Ms. Devalle follows behind him and gets into the driver's seat of the vehicle (id. at 02:30:58). Three officers then return to the driver's side of the vehicle, where one officer remains there for several moments while the others move back and forth between the vehicle and the police car (id. at 02:31:05-02:40:24). Then one officer escorts Ms. Devalle to the police car (id. at 02:40:27). After the officer and Ms. Devalle leave the view of the camera, one of the officers gets into the driver's seat, the front and rear vehicle lights come back on, and the vehicle and [*8]police car drive away (id. at 02:41:07).
The other video taken at the scene of the arrest depicts a partial view of the vehicle, from just behind the passenger door to the back of the vehicle (NYSCEF Doc No. 65). A police car pulls in behind the vehicle at 00:55 seconds into the video (id.). Two officers exit the car and approach the vehicle, then the second police vehicle approaches shortly thereafter (id.). All four officers approach the vehicle, three on the driver's side and one on the passenger's side (id.). Mr. Menard is escorted to the back of the vehicle, but the video resolution and angle limit the view of his interaction with the officers (id.). At 07:51 minutes, one officer opens the passenger's side door, while the three other officers stand with Mr. Menard (id.). The three officers then start towards the police vehicles, and the fourth officer exits the car (id. at 08:17). Ms. Devalle exits her vehicle just behind the fourth officer, follows behind him as he walks towards the police vehicles, and then turns and walks around to the driver's side of her vehicle as all four officers proceed to the second police vehicle with Mr. Menard (id. at 08:25). Approximately a minute later, three of the officers proceed back to Ms. Devalle's vehicle (id. at 09:17). Several minutes later, the officers escort Ms. Devalle to the police vehicle (id. at 16:01).

DISCUSSION
A motion for summary judgment "shall be granted if, upon all the papers and proofs submitted, the cause of action or defense shall be established sufficiently to warrant the Court as a matter of law in directing judgment in favor of any party" (CPLR § 3212[b]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (Dallas-Stephenson v Waisman, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013][internal quotation marks and citation omitted]). Upon proffer of evidence establishing a prima facie case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010][internal quotation marks and citation omitted]).
Whereas Plaintiffs only oppose the motion with respect to the causes of action for false arrest, malicious prosecution, and abuse of process, the causes of action for (2) negligent hiring, training, supervision, and retention under New York state law, (3) Monell under 42 U.S.C. § 1981, 1983, 1985, 1986, and respondeat superior, (4) municipal and/or government liability, (5) excessive force, (8) intentional infliction of emotional distress, and (9) negligence are dismissed. To the extent that punitive damages are pleaded as a separate cause of action, the cause of action is dismissed because punitive damages may not be pleaded as a stand-alone cause of action, but Plaintiffs may nonetheless seek punitive damages at trial.
A. False Arrest"In New York, the tort of false arrest is synonymous with that of false imprisonment "(Posr v Doherty, 944 F2d 91, 96 [2d Cir 1991]). The elements of false arrest are "substantially the same" under state and federal law and require the same analysis (Crooks v City of New York, 189 AD3d 771, 771 [2d Dept 2020]). "Under the common law, a plaintiff may bring suit for false arrest and imprisonment against one who has unlawfully robbed the plaintiff of [their] 'freedom from restraint of movement'" (De Lourdes Torres v Jones, 26 NY3d 742, 759 [2016], quoting Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975][other citation omitted]). To prevail on a cause of action for false arrest or imprisonment, a plaintiff must demonstrate that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not privileged (DeLourdes Torres, 26 NY3d at 759 [citations omitted]; see Martinez v City of Schenectady, 97 NY2d 78, 85 [2001]; Broughton, 37 NY2d at 456-457, supra).
"For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause" (De Lourdes Torres, 26 NY3d at 759 [citations omitted]; see Gann v City of New York, 197 AD3d 1035, 1035 [1st Dept 2021]["showing of probable cause to arrest is a complete defense to an unlawful arrest and imprisonment claim"]). "Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty" (Colon v City of New York, 60 NY2d 78, 82 [1983]; see De Lourdes Torres, 26 NY3d at 759; Atwater v City of Lago Vista, 532 US 318, 354 [2001]["If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"]). "Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed by the suspected individual, and probable cause must be judged under the totality of the circumstances" (De Lourdes Torres, 26 NY3d at 759).
Both Plaintiffs were arrested and charged with offenses under VTL § 1192. Each offense under VTL § 1192 directs that "no person shall operate a motor vehicle" while under the influence of drugs or alcohol. The term "operate" is not defined by statute. Courts have examined this issue extensively and held that a person "operates" a vehicle when they intentionally do "any act or makes use of any mechanical or electrical agency which alone or in sequence" will set the vehicle in motion (People v Prescott, 95 NY2d 655, 662 [2001]). Thus, operation of a vehicle is established upon proof that an individual is sitting behind the wheel of a vehicle with the engine running, regardless of whether they are observed driving the vehicle (People v Jones, 213 AD3d 416, 417 [1st Dept 2023], citing People v Alamo, 34 NY2d 453, 458 [1974]).
Mr. Menard was charged under VTL § 1192 (1) and (3), and Ms. Devalle was charged under § 1192 (1), (2), and (3). Subsections (1) and (3), respectively, prohibit operation of a motor vehicle while the person's ability to do so is "impaired by the consumption of alcohol" and operation of a motor vehicle "while in an intoxicated condition." For the purposes of the statute, "impairment" means that the driver "has actually impaired, to any extent, the physical and [*9]mental abilities [they are] expected to possess in order to operate a vehicle as a reasonable and prudent driver" (People v Cruz, 48 NY2d 419, 427 [1979]). "[I]ntoxication is a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that [they are] incapable of employing the physical and mental abilities which [they are] expected to possess in order to operate a vehicle as a reasonable and prudent driver" (id. at 429). An officer has probable cause to arrest an individual for violation of VTL § 1192 (1) or (3) where the officer had a reasonable belief that an individual was operating a vehicle in an impaired or intoxicated state (Fermin-Perea v Swarts, 95 AD3d 439, 441 [1st Dept 2012]).
Subsection (2) of VTL § 1192 prohibits operation of a motor vehicle while "such person has .08 of one per centum or more by weight of alcohol in [their] blood as shown by chemical analysis of such person's blood, breath, urine or saliva, made pursuant to the provisions of [VTL § 1194]." Any person that operates a motor vehicle in New York is deemed to have given consent to a chemical test of breath, blood, urine, or saliva, for the purpose of determining the alcohol or drug content of the blood (VTL § 1194 [2]). However, the implied consent provision is only applicable where the officer has "reasonable grounds" to believe that the individual was operating a vehicle in violation of VTL § 1192 or 1192-a, and the test must take place within two hours of the arrest or two hours after a field test indicated the presence of alcohol (VTL § 1194 [2][1]-[2]). "Reasonable grounds" is determined "by viewing the totality of circumstances surrounding the incident which, when taken together, indicates that the operator was driving in violation of [Vehicle and Traffic Law § 1192 and § 1192—a]" (Fermin-Perea v Swarts, 95 AD3d 439, 943 [1st Dept 2012], citing VTL § 1194 [2][3]).
The City argues that the cause of action for false arrest is privileged and must be dismissed because there was probable cause to arrest both Plaintiffs. The City argues that there was probable cause to arrest Mr. Menard because Officers Marksbury and Bergin observed Plaintiffs sleeping inside the illegally parked vehicle, with the keys in the ignition and the vehicle running, and because Officer Marksbury smelled alcohol on Mr. Menard's breath and observed him to have bloodshot, watery eyes, slurred speech, flushed skin (NYSCEF Doc No. 34, aff in support at 5). The City further argues that probable cause existed because Mr. Menard "was observed to walking unsteadily and using the vehicle as a guide" (id.).
An officer's observation that an individual has breath that smells of alcohol, bloodshot or glassy eyes, slurred or illogical speech, difficultly walking, or failing a field sobriety test or PBT may form the basis for "reasonable grounds" or probable cause for an arrest pursuant to VTL § 1192 (1), (3) or administer a chemical analysis under VTL § 1194 (2) (People v Rufus, 43 NY3d 268, 271-272 [2024]; Fermin-Perea v Swarts, 95 AD3d at 441; People v Taylor, 104 AD34 603, 604 [2013]). Nevertheless, there are several contradictions between the testimony of the two officers and the other evidence presented on the motion that give rise to material questions of fact regarding the issue of probable cause.
First, both officers testified that they approached the driver's side of the vehicle, while their partner approached the passenger's side (YNSCEF Doc No. 38, Marksberry dep tr at 59, ln 17-18; NYSCEF Doc No. 39, Bergin dep tr at 59, ln 17-18).). They also both testified that they first questioned Mr. Menard and instructed him to step out of the vehicle, but Officer Marksberry [*10]testified that he instructed Mr. Menard to step out of the vehicle because he "smelled alcohol on ]Mr. Menard's] breath," and Mr. Menard had "bloodshot watery eyes and slurred speech" (NYSCEF Doc No. 38, Marksberry dep tr at 55, ln 16-22; 57, ln 7-9), while Officer Bergin testified that he asked Mr. Menard to step out of the vehicle because Mr. Menard gave "evasive" answers to his questions that "threw up" the officer's senses (NYSCEF Doc No. 39, Bergin dep tr at 64, ln 7-10, 11-13). Officer Bergin did not recall the answers that purportedly raised his suspicions (id.). The City makes no attempt to reconcile these competing narratives, and no explanation is offered for how both could be true. Additionally, the IDTU report completed by Officer Bergin indicates that Mr. Menard's speech was "clear," in contradiction to the officer's testimony (NYSCEF Doc No. 45, IDTU records at 10).
Officer Marksberry also testified several times that he witnessed Mr. Menard with bloodshot, watery eyes from a distance of "no further than a foot away from Mr. Menard" (id. at 59, ln 19; 67, ln 8-10, 18-20), while Officer Bergin testified that he observed Mr. Menard's eyes while he was at the rear of the vehicle. When asked if he observed anything about Mr. Menard's eyes, Officer Bergin testified that "[t]o the best of my ability they were bloodshot" (NYSCEF Doc No. 39, Bergin dep tr at 79, ln 16-17). Despite Officer Marksberry's testimony that he had a much closer interaction with Mr. Menard, with a closer view of his eyes, Officer Bergin processed Mr. Menard's arrest and offered the supporting testimony included in the criminal complaint against Mr. Menard (NYSCEF Doc No. 49, records at 22). In the affidavit, Officer Bergin also attested that he witnessed Mr. Menard "sleeping over the steering wheel" (id.). However, this attestation is contradicted by the photographs taken by Officer Marksberry at the scene, which depict the Plaintiffs leaning against each other asleep and not touching the steering wheel of the vehicle (NYSCEF Doc No. 50, photos). This is corroborated by Marksberry's testimony that Ms. Devalle's head was on Mr. Menard's shoulder (id. at 50, ln 7-19).
Additionally, the officers' testimony that Mr. Menard walked unsteadily towards the back of the vehicle, was swaying, or used the vehicle to guide himself is contradicted by the video evidence, which depicts him walking steadily, with his hands in his pockets and not touching the vehicle as he walks towards the area between Ms. Devalle's vehicle and the police vehicle (NYSCEF Doc No. 55). He also does not take any steps forward and back to "catch himself," as Officer Marksberry testified (NYSCEF Doc No. 38, Marksberry dep tr at at 77, ln 17-24).
To the extent that there was a probable cause finding at the DMV hearing, this is persuasive evidence, but the City does not argue that this court is bound by the administrative decision or that Plaintiffs are estopped from relitigating this issue. "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action" (Kaufman v Eli Lilly & Co., 65 NY2d 449, 456 [1985]). Having not raised this issue, the City has not met its burden with respect to this issue.
With respect to Ms. Devalle, the City argues that there was probable cause to arrest her because she tried to "flee" the scene while intoxicated (NYSCEF Doc No. 34, aff in support at [*11]6).[FN3]
Indeed, Ms. Devalle concedes that she consumed alcohol on the evening in question, but there is no testimonial or other evidence that supports a finding that she attempted to "flee" the scene of the arrest. Officer Marksberry testified that she "jumped" into the driver's seat and started the vehicle, notwithstanding his instruction that Ms. Devalle remain inside and not move the vehicle (NYSCEF Doc No. 38, Marksberry dep tr at 89-90). Notably, Officer Marksbury stated that his sergeant alerted him to the fact that Ms. Devalle had jumped in the vehicle, which indicates he did not see her get into the car and that his testimony relied, at least in part, on hearsay from Sergent Nunez (id. at 89, ln 8-9). Meanwhile, Officer Bergin testified that he could not recall whether someone on the scene told Ms. Devalle to move the vehicle or that the vehicle had to be moved (NYSCEF Doc No. 39, Bergin dep tr at 116, ln 20-24). Ms. Devalle testified both at her 50-h hearing and deposition that the officers told her to move and park the car (NYSCEF Doc No. 43, 50-h tr at 26, 7-9; NYSCEF Doc No. 42, Devalle dep tr at 45-46). Mr. Menard also testified that he heard the officers tell Ms. Devalle to move the car (NYSCEF Doc No. 41, Menard 50-h tr at 26). The conflicting testimonial evidence creates a material question of fact regarding whether the officers instructed Ms. Devalle to move the vehicle.
Moreover, video of the incident shows an officer standing next to the passenger car door beside Ms. Devalle as she exits the video (NYSCEF Doc No. 65, video at 08:25). As the other three officers escort Mr. Menard to the police vehicle, Ms. Devalle walks around her vehicle at a normal pace to the driver's side of the vehicle (id.). Her casual pace contradicts any characterization that she tried to "flee." The driver's side video also clearly shows the lights of the vehicle turn off when Mr. Menard shut off the car shortly after the officers approach (NYSCEF Doc No. 66, video 02:22:01). The lights then remain dark until an officer enters the vehicle, start the engine, and drive the car away after both Plaintiffs were arrested (id. at 02:41:07). This strongly suggests that Ms. Devalle did not start the vehicle and raises a question of fact regarding whether she "operated" the vehicle, a required element of an offense under VTL § 1192 (see People v Prescott, 95 NY2d at 662).
The many contradictions between the testimony of the two arresting officers and between the testimony and other evidence calls the officers' credibility and the reliability of the testimony into question. "Where there is conflicting evidence concerning the existence of probable cause to arrest the plaintiff, from which reasonable persons might draw different inferences, the question is one for the jury" (Mendez v City of New York, 137 AD3d 468, 470 [1st Dept 2016]). These outstanding questions of fact also preclude a determination regarding qualified immunity at this stage (see Delgado v City of New York, 86 AD3d 502, 510 [1st Dept 2011]). Therefore, the motion is denied with respect to the cause of action for false arrest with respect to both Plaintiffs.
B. Malicious ProsecutionLike false arrest, the elements of malicious prosecution are substantially the same under [*12]state and federal law (Crooks, 189 AD3d at 771, supra). To recover damages for malicious prosecution, a plaintiff must establish (1) that a criminal proceeding was initiated against them, (2) it termination favorably to plaintiff, (3) lacked of probable cause for the prosecution, and (4) was brought out of actual malice (Morant v City of New York, 95 AD3d 612 [1st Dept 2012] quoting Colon v City of New York, 60 NY2d 78,82 [1983]; Martinez v City of Schenectady, 97 NY2d 78, 84 [2001]). The existence of probable cause constitutes a complete defense to a claim of malicious prosecution (Lawson v City of New York, 83 AD3d 609 [1st Dept 2011]).
"A cause of action for malicious prosecution accrues when the criminal proceeding terminates favorably to the plaintiff" (Bumbury v City of New York, 62 AD3d 621, 621 [1st Dept 2009]), and is subject to the notice of claim requirement under the General Municipal Law (GML § 50-e). The Court of Appeals has held that a notice of claim filed before the favorable disposition is untimely (Vitale v Hagan, 70 NY2d 957, citing Vitale v Hagan, 132 AD2d 468, 470-472 [1st Dept, Murphy, J., dissenting]). Whereas this court is bound by this precedent, the causes of action for malicious prosecution are dismissed.
C. Abuse of ProcessThe torts of malicious prosecution and malicious abuse of process are closely related. "While malicious prosecution concerns the improper issuance of process . . . abuse of process is the improper use of process after it is regularly issued" (Cook v Sheldon, 41 F3d 73, 80 [2d Cir 1994]). "A cause of action for abuse of process "has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective" (Matthews v New York City Dept of Soc. Servs., Child Welfare Admin., 217 AD2d 413, 415 [1st Dept 1995], citing Curiano v Suozzi, 63 NY2d 113, 116 [1984]).
Plaintiffs cause of action for abuse of process fails because they do not make factual allegations that Officers Marksberry and Bergin improperly used a regularly issued process after it was issued (id. at 415 ["the mere commencement of a legal action does not constitute abuse of process, and the process must be improperly used after it has been issued"]). Absent such allegations, the cause of action is merely duplicative of the causes of action for false arrest and malicious prosecution. As such, the cause of action for abuse of process is dismissed.
Accordingly, it is hereby
ORDERED that the Defendants' motion for summary judgment is granted in part and to the extent that the second, third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action for negligent hiring, training, supervision, and retention under New York state law, Monell under 42 U.S.C. § 1981, 1983, 1985, 1986, and respondeat superior, municipal and/or government liability, excessive force, malicious prosecution, abuse of process, intentional infliction of emotional distress, and negligence are dismissed; and it is further
ORDERED that the ninth cause of action for punitive damages is dismissed to the extent that it is interposed as an independent cause of action, but Plaintiffs shall retain their right to [*13]seek punitive damages at trial; and it is further
ORDERED that the motion is denied with respect to the first cause of action for false arrest; and it is further
ORDERED that the dismissed causes of action are severed and the balance of the action shall continue; and it is further
ORDERED that the Clerk of the Court shall enter judgment in favor of defendants the City of New York, the New York City Police Department, PO Steven Marksberry, and PO Brendan Bergin dismissing the second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth causes of action as against them, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs; and it is further
ORDERED that Plaintiffs shall contact the court at [email protected], copying all parties, within ten (10) business days of entry of this order to schedule a settlement conference in Part 5 on a date that is mutually agreeable to counsel for the parties and the court.
This constitutes the order and decision of the court.
DATE 1/22/2026HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Sometime after the events at issue in this case, Officer Bergin was promoted to sergeant. He is referred to as "officer" here only to maintain consistency with respect to the underlying facts.

Footnote 2:The City's answer is designated as an amended answer, it is the only answer filed to the court's docket. To the extent that an earlier answer was served, it was not filed with the court.

Footnote 3:The title of the relevant section of the City's supporting brief is "OFFICERS HAD PROBABLE CAUSE TO ARREST PLAINTIFF ROSA DEVALLES AS SHE TRIED TO FLEE THE SCENE WHILE INTOXICATED" (NYSCEF Doc No. 34, aff in support at 6 [emphasis added]).